# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

ZOE & STELLA FOSTER, minor
children by and through their
guardians MICHAEL FOSTER and
MALINDA BAILEY; AJI & ADONIS
PIPER, minor children by and
through their guardian HELAINA
PIPER; WREN WAGENBACH, a
minor child by and through her
guardian MIKE WAGENBACH;
LARA FAIN, a minor child by and
through her guardian MONIQUE
DINH; GABRIEL MANDELL, a
minor child by and through his
guardians VALERIE and RANDY
MITCHELL; JENNY XU, a minor
child by and through her guardians
YAN ZHANG & WENFENG XU,

   Respondents,

 v.

WASHINGTON DEPARTMENT
OF ECOLOGY,

   Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 75374-6-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: September 5, 2017

LEACH, J. — The Washington State Department of Ecology appeals a superior court CR 60(b) decision granting relief from an earlier judgment that affirmed Ecology's denial of a petition for rule making. Because the superior court abused its discretion in several ways, we reverse.

## FACTS

A group of minors, Zoe and Stella Foster, Aji and Adonis Piper, Wren Wagenbach, Lara Fain, Gabriel Mandell, and Jenny Xu (collectively "youth"),

acting on their concern about climate change and ocean acidification, through their guardians petitioned Ecology for rule making. The youth asked Ecology to adopt their proposed rule to address greenhouse gas (GHG) emission reduction. Ecology denied this request in favor of its own approach to rule making.

The youth challenged Ecology's decision under the Administrative Procedure Act (APA).[1] They claimed that Ecology incorrectly interpreted and applied the law and acted arbitrarily and capriciously by denying their petition. Specifically, the youth claimed that Ecology failed to satisfy its duty under (1) the public trust doctrine[2] and (2) RCW 70.235.040, which requires Ecology to report current science on climate change to the legislature and make recommendations about GHG emission reductions.

With their appeal, the youth submitted "new evidence" under RCW 34.05.562(1) to support their argument: a report published by Ecology four months after Ecology denied the youth's petition for rule making and an expert declaration reviewing the report. The superior court remanded the matter so Ecology could reconsider its denial of the youth's petition in light of the new evidence.

---

[1] Ch. 34.05 RCW.

[2] CONST. art. XVII, § 1; Caminiti v. Boyle, 107 Wn.2d 662, 669, 732 P.2d 989 (1987).

Meanwhile, Washington's governor submitted a bill to the legislature for consideration in the 2015 session, seeking authority for Ecology to adopt a cap-and-trade program.[3] But the legislature failed to pass the climate change bill. So, on July 28, 2015, the governor directed Ecology to use its existing authority to develop a rule setting a cap on carbon emissions in Washington.

As ordered by the trial court, Ecology reconsidered the youth's petition. On August 7, it again denied the petition. Ecology declined to adopt the specific rule the youth proposed.[4] It stated, however, "Ecology has begun taking the necessary steps to comply with the Governor's [July 28, 2015] directive and initiate the rulemaking process. Ecology has committed to initiating the formal Administrative Procedure Act rulemaking process in 2015, and adopting a final rule by the end of 2016." (Citation omitted.)

In November 2015, the superior court affirmed Ecology's denial of the petition for rule making (November 2015 order). It stated, "Now that Ecology has commenced rulemaking to establish greenhouse [gas] emission standards taking into account science [as] well as economic, social and political considerations, it cannot be found to be acting arbitrarily or capriciously."

---

[3] H.B. 1314, 64th Leg., Reg. Sess. (Wash. 2015); S.B. 5283, 64th Leg., Reg. Sess. (Wash. 2015).

[4] "Ecology is not granting the Petition insofar as Ecology is not adopting the specific rule Petitioners are seeking. However, Ecology is initiating a rulemaking to adopt a rule under a directive issued by Governor Inslee on July 28, 2015."

Ecology issued a draft rule in January 2016 and began receiving public comment.[5] Based on the numerous comments Ecology received, it decided to make substantial changes to the proposed rule.[6] So it withdrew the rule, intending to issue a revised proposed rule later that year.[7] It claimed it was on track to adopt a rule by the end of 2016.[8]

In April, after Ecology withdrew the draft rule, the youth filed a CR 60(b) motion for relief from the November 2015 order. The motion asserted that "[b]y withdrawing the proposed rule, Ecology has once again demonstrated that it is unable or unwilling to fulfill its legal responsibilities absent a Court order directing it to do so in a timely manner." The motion asserted both that Ecology had engaged in misrepresentation (CR 60(b)(4)) and that "extraordinary circumstances" justified relief (CR 60(b)(11)).[9] The court granted the motion under CR 60(b)(11) only. The court ordered Ecology to proceed with rule making as directed by the governor and issue a rule by the end of the 2016 calendar year. In addition, the court ordered Ecology to provide a recommendation to the 2017 legislature on GHG emission limits.

Ecology appeals the CR 60(b) order (also called the May 2016 order).

---

[5] Wash. St. Reg. (WSR) 16-02-101 (Jan. 5, 2016) (proposed rules).
[6] WSR 16-06-072 (Feb. 26, 2016) (withdrawal of proposed rules).
[7] WSR 16-06-072.
[8] WSR 16-06-072.
[9] Union Bank, NA v. Vanderhoek Assocs., LLC, 191 Wn. App. 836, 845, 365 P.3d 223 (2015).

After Ecology filed its notice of appeal, it continued to work on rule making. In September 2016, Ecology adopted the clean air rule establishing GHG emission standards.[10] In December 2016, Ecology made a recommendation to the legislature to update the GHG emission limits contained in RCW 70.235.020.[11]

In October 2016, the youth asked the trial court to hold Ecology in contempt for failing to comply with the court's orders. The trial court denied this request, finding that Ecology had "complied to date with the letter of [the trial court's] orders." Although this case was then on appeal, the court on its own initiative and without this court's permission entered an order granting the youth permission to file an amended petition for review. The court stated,

> IT IS FURTHER ORDERED sua sponte that petitioners are GRANTED leave to amend their petition to plead therein a complaint for declaratory judgment or other action regarding their claims that respondent Ecology and/or others are violating their rights to a healthy environment as protected by statute, by Article I, Section 30, Article XVII, Section 1, and Article XVII, Section 1[12] of the Washington State Constitution and the Public Trust Doctrine embodied therein. The Court takes this action due to the emergent need for coordinated science based action by the State of Washington to address climate change before efforts to do so are too costly and too late.

---

[10] WAC 173-442-010; WSR 16-19-047 (Sept. 15, 2016).

[11] WASH. DEP'T OF ECOLOGY, PUB. NO. 16-01-010, WASHINGTON GREENHOUSE GAS EMISSION REDUCTION LIMITS: REPORT PREPARED UNDER RCW 70.235.040 (2016), https://fortress.wa.gov/ecy/publications/documents/1601010.pdf.

[12] Duplicate in original.

No. 75374-6-I / 6

The youth did file an amended petition for review adding new issues and new parties. This court denied a belated request for permission to enter the order.

ANALYSIS

Mootness

First, the youth ask that we dismiss Ecology's appeal as moot. We will dismiss an appeal if the application for review is moot.[13] "A case is moot when 'the court can no longer provide effective relief.'"[14] The youth assert that Ecology's appeal is moot because Ecology has done what the trial court order required. Ecology does not dispute this. But mootness depends on "whether a court can grant effective relief by restoring the parties to the status quo, not whether the party complied with the trial court's order."[15]

Ecology claims that its appeal is not moot because the outcome affects ongoing litigation. Ecology has a reasonable concern. The superior court has acted to retain jurisdiction over this case. It stated,

> The reason I'm [granting the CR 60(b) motion] is because this is an urgent situation. This is not a situation that these children can wait on. Polar bears can't wait. The people of Bangladesh can't wait. I don't have jurisdiction over their needs in this matter,

[13] RAP 18.9(c).
[14] In re Det. of M.W., 185 Wn.2d 633, 648, 374 P.3d 1123 (2016) (quoting State v. Hunley, 175 Wn.2d 901, 907, 287 P.3d 584 (2012)).
[15] Pentagram Corp. v. City of Seattle, 28 Wn. App. 219, 223, 622 P.2d 892 (1981).

-6-

but I do have jurisdiction in this court. And for that reason, I'm taking this action.

The superior court appears to have used the CR 60(b) decision and its later decision allowing an amended petition for review to retain jurisdiction to monitor Ecology's progress in addressing GHG emission regulation.

If this court reverses the CR 60(b) order, then the November 2015 order is the final judgment in the matter and the case is over. If this court affirms, then the trial court may continue to review Ecology's actions. Thus, the parties do have a stake in the outcome of this appeal.

Ecology also predicts that the youth will rely on the May 2016 and November 2015 orders to make future res judicata or law of the case arguments. Ecology has concerns that the trial court's legal conclusions expressed in those orders—about, for example, the public trust doctrine—will bind it in later litigation. Although the superior court affirmed Ecology's denial of the youth's petition, it stated several legal conclusions about Ecology's statutory and constitutional duties. Ecology disagrees with those conclusions but, as the prevailing party, did not appeal the decision. The May 2016 order did not reverse those conclusions.

The res judicata and law of the case doctrines may preclude a party from raising certain arguments that have already been litigated.[16] While the preclusive

---

[16] Pederson v. Potter, 103 Wn. App. 62, 67, 11 P.3d 833 (2000) (explaining the res judicata doctrine); Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc., 61 Wn. App. 151, 160, 810 P.2d 12 (1991) ("A decision by the appellate court on appeal as to every question that was determined on appeal and as to

effect of the November 2015 order on later litigation is uncertain,[17] particularly as the parties have not argued those issues here, their possible application causes this court to err on the side of caution and decide the issues presented.

<u>CR 60(b)</u>

Ecology contends that the superior court abused its discretion in granting the youth's CR 60(b) request. We review a superior court's decision to vacate a judgment under CR 60(b) for manifest abuse of discretion.[18] A superior court abuses its discretion when it makes a manifestly unreasonable decision or bases that decision on untenable grounds or untenable reasons.[19] When the trial court commits an error of law, it necessarily abuses its discretion.[20]

The superior court abused its discretion in three ways. First, the superior court improperly granted relief under the APA without finding any APA violation. Second, no "extraordinary circumstances" justified relief under CR 60(b). Third,

---

every question which might have been determined becomes the law of the case and supersedes the trial court's findings.").

[17] There are, for example, exceptions, such as fundamental fairness, to the application of res judicata. <u>Somsak v. Criton Techs./Heath Tecna, Inc.</u>, 113 Wn. App. 84, 93, 52 P.3d 43 (2002).

[18] <u>In re Guardianship of Adamec</u>, 100 Wn.2d 166, 173, 667 P.2d 1085 (1983).

[19] <u>In re Schuoler</u>, 106 Wn.2d 500, 512, 723 P.2d 1103 (1986).

[20] <u>Pub. Util. Dist. No. 1 of Okanogan County v. State</u>, 182 Wn.2d 519, 531, 342 P.3d 308 (2015) ("An error of law necessarily constitutes an abuse of discretion.").

the superior court improperly attempted to modify its original judgment through its CR 60(b) order.

*APA Violation*

Ecology first contends that the superior court did not have authority to grant relief under the APA because it never found any APA violation. We agree.

"An agency's decision to deny a rule making petition is subject to judicial review as other agency action under RCW 34.05.570(4)."[21]

> Relief for persons aggrieved by the performance of an agency action . . . can be granted only if the court determines that the action is:
> (i)     Unconstitutional;
> (ii)     Outside the statutory authority of the agency or the authority conferred by a provision of law;
> (iii)     Arbitrary or capricious; or
> (iv)     Taken by persons who were not properly constituted as agency officials lawfully entitled to take such action.[22]

Here, the superior court never found that Ecology's denial met any of these requirements. While the court concluded that Ecology has a statutory duty to adopt rules establishing air quality standards, it stated that Ecology was satisfying that duty by engaging in rule making under the governor's directive. In addition, the court found that Ecology's rule making complied with its constitutional duties. Thus, the court ultimately concluded that Ecology's denial

---

[21] Squaxin Island Tribe v. Dep't of Ecology, 177 Wn. App. 734, 740, 312 P.3d 766 (2013).
[22] RCW 34.05.570(4)(c).

was not arbitrary or capricious. In its May 2016 order, the superior court vacated the parts of the November 2015 order that denied relief but stated that "[a]ll other portions of the November 19, 2015 Order remain in full force and effect." Nothing in either order finds that Ecology violated the APA. Thus, the court had no basis to grant relief under the APA.[23]

The youth incorrectly assert that the superior court, in effect, did find that Ecology violated the APA when it denied their petition for rule making. The youth claim that the superior court found an APA violation because it found that Ecology's efforts to that point did not comply with its statutory (Washington Clean Air Act, chapter 70.94 RCW) and constitutional (public trust doctrine, article XVII, section 1) duties. But the superior court's conclusions about Ecology's past compliance with its duty to create and propose rules are not relevant to its decision about Ecology's denial of the petition.

In its November 2015 order, the court ultimately concluded, "Now that Ecology has commenced rulemaking to establish greenhouse [gas] emission standards taking into account science [as] well as economic, social and political considerations, it cannot be found to be acting arbitrarily or capriciously" in

_____

[23] Ecology presents arguments to justify its denial of the youth's rule making petition, explaining why its rule making complied with its duties. But the validity of Ecology's decision is not at issue. The superior court affirmed that decision in its November 2015 order and the May 2016 order, granting relief from judgment, did not reverse that part of its earlier judgment.

denying the petition for rule making.  The court never modified that finding.  It thus had no authority to reverse its November 2015 order.

*Extraordinary Circumstances*

Next, Ecology asserts that no extraordinary circumstances justified relief in this case.  CR 60(b) contains a catchall provision that permits a court to grant relief from a final judgment for "[a]ny other reason justifying relief from the operation of the judgment."[24]  "Relief pursuant to CR 60(b)(11) should be confined to situations involving extraordinary circumstances not covered by any other section of the rule."[25]  Extraordinary circumstances are those that constitute irregularities to the action or go to question the regularity of the proceedings.[26]

A change in law might constitute extraordinary circumstances.[27]  Courts have also found extraordinary circumstances when one party to a property settlement was able to avoid complying with the terms of that settlement.[28]  One court found extraordinary circumstances where, due to severe depression, an

---

[24] CR 60(b)(11).

[25] State v. Keller, 32 Wn. App. 135, 140, 647 P.2d 35 (1982).

[26] Union Bank, 191 Wn. App. at 845 (quoting In re Det. of Ward, 125 Wn. App. 374, 379, 104 P.3d 751 (2005) (quoting In re Marriage of Knies, 96 Wn. App. 243, 248, 979 P.2d 482 (1999))); In re Marriage of Flannagan, 42 Wn. App. 214, 221, 709 P.2d 1247 (1985).

[27] Flannagan, 42 Wn. App. at 221-23.

[28] In re Marriage of Hammack, 114 Wn. App. 805, 810, 60 P.3d 663 (2003) (distinguishing In re Marriage of Thurston, 92 Wn. App. 494, 503, 963 P.2d 947 (1998) and Knies, 96 Wn. App. at 250-51).

attorney failed to comply with a discovery order.[29] By contrast, insufficient evidence does not warrant CR 60(b) relief because it is not an error that is extraneous to the action or affects the regularity of the proceedings.[30] The cases where courts have found extraordinary circumstances all involve circumstances previously unknown to the court or that had changed since the earlier judgment. The trial court did not find either circumstance in this case.

The superior court did not make clear what in particular it thought was extraordinary. In its May 2016 order, the court made the following findings of fact and stated that it found them to constitute extraordinary circumstances under CR 60(b)(11):

1. The Washington State Department of Ecology is required by law to periodically report to the legislature summarizing human-caused climate change and to make recommendations regarding whether greenhouse gas emission reductions required by Washington statute need to be updated.
2. The effect of climate change on water supplies, public health, coastal storm damage, wildfires and other impacts will be costly unless additional actions are taken to reduce greenhouse gases.
3. Current science establishes that rapidly increasing global warming causes an unprecedented risk to the earth including land, sea and atmosphere and all living plants and creatures.
4. Washington faces serious economic and environmental disruptions from the effects of climate change.

---

[29] Barr v. MacGugan, 119 Wn. App. 43, 46-48, 78 P.3d 660 (2003).

[30] Burlingame v. Consol. Mines & Smelting Co., 106 Wn.2d 328, 336, 722 P.2d 67 (1986).

5. The climate crisis presents an urgent situation that youth petitioners cannot wait on.

6. Ecology did start a rulemaking procedure to reduce greenhouse gas emissions in Washington. However, the court is not confident that absent a court order, the rulemaking procedure will be complete by the end of 2016.

In its oral ruling, the court quoted Ecology's statement that "Washington faces serious economic and environmental disruptions from the effects of climate changes." The court's language suggests that it may consider climate change to be the extraordinary circumstance. While the youth present other arguments to show extraordinary circumstances, they continually return to the severity of climate change, emphasizing the urgency of the crisis.

For purposes of applying CR 60(b) in this case, climate change is not an extraordinary circumstance. Notably, the superior court had considered climate change earlier. The urgent and serious nature of climate change was a major component of the court's November 2015 order. In addition, the parties do not contest the seriousness of climate change. A circumstance acknowledged by all parties and previously considered by the court is not an extraordinary circumstance for purposes of CR 60(b).

The youth contend that the extraordinary circumstance is 26 years of inaction by Ecology. But, like climate change itself, 26 years of inaction was already considered by the trial court and not a new development after judgment. Thus, it is not an extraordinary circumstance.

-13-

The youth also identify Ecology's withdrawal of the proposed rule as an extraordinary circumstance. Ecology disagrees. It notes that withdrawing a proposed rule is one of two allowed methods of making substantial changes to a proposed rule. Thus, its rule withdrawal was merely part of the normal rule making process.[31] The APA requires an agency to consider comments about a proposed rule before it promulgates a final rule.[32] To adopt a substantially different rule, an agency must either publish a supplemental notice of rule making or withdraw the proposed rule and initiate a new rule making proceeding.[33] In withdrawing the rule, Ecology was merely complying with its duty under the APA.

The youth rely on In re Marriage of Thurston[34] for the proposition that a nonoccurrence of a material condition can be an extraordinary circumstance. But we distinguish that case. Thurston held that the nonoccurrence of a material condition to a dissolution settlement was an extraordinary circumstance that warranted the court's intervention.[35] Here, Ecology's decision to withdraw and revise the proposed rule in light of public comments was simply a part of its normal rule making process. It claimed it was still on track to adopt the rule by

---

[31] See In re Marriage of Yearout, 41 Wn. App. 897, 902, 707 P.2d 1367 (1985) ("The courts have stressed the need for the presence of 'unusual circumstances' before CR 60(b)(11) will be applied." (citing In re Adoption of Henderson, 97 Wn.2d 356, 360, 644 P.2d 1178 (1982))).
[32] RCW 34.05.325.
[33] RCW 34.05.340.
[34] 92 Wn. App. 494, 496, 963 P.2d 947 (1998).
[35] Thurston, 92 Wn. App. at 503.

the end of the year,[36] which it later demonstrated by its adoption of the clean air rule in September 2016.[37] Unlike the spouse in Thurston, Ecology did not break any material promise.

The youth have demonstrated no extraordinary circumstance that justifies CR 60(b)(11) relief.

*Scope of CR 60(b) Order*

Finally, Ecology claims that the court improperly used the CR 60(b) order to revise its previous final judgment. We agree.

CR 60(b) allows the court to provide only a limited remedy. "'Rule 60(b) is available only to set aside a prior judgment or order; courts may not use Rule 60(b) to grant affirmative relief in addition to the relief contained in the prior order or judgment.'"[38] A court may not correct errors of law with a CR 60 order.[39] "[R]ather, direct appeal is the proper means of remedying legal errors."[40] "A

---

[36] WSR 16-06-072 ("Ecology intends to continue working with stakeholders and updating the proposed rule language. We expect to file a new proposed rule in spring 2016 and finalize the rule in late summer 2016.").

[37] WAC 173-442-010; WSR 16-19-047.

[38] Geonerco, Inc. v. Grand Ridge Props. IV, LLC, 159 Wn. App. 536, 542, 248 P.3d 1047 (2011) (internal quotation marks omitted) (quoting Delay v. Gordon, 475 F.3d 1039, 1044-45 (9th Cir. 2007)).

[39] Thurston, 92 Wn. App. at 499.

[40] Burlingame, 106 Wn.2d at 336.

judgment which has been vacated is of no force or effect and the rights of the parties are left as though no such judgment had ever been entered."[41]

The youth maintain that the superior court's May 2016 order did no more than vacate portions of its November 2015 order. Although the court stated that it was vacating the November 2015 order, the CR 60(b) order did not simply relieve the youth from an adverse judgment. It also ordered the following:

1. Ecology shall proceed with the rulemaking procedure to adopt a rule to limit greenhouse gas emissions in Washington state as directed by Governor Inslee in July 2015, and shall issue the rule by the end of calendar year 2016.

2. Ecology shall provide a recommendation to the 2017 legislature on greenhouse gas limits for the state of Washington as provided in RCW 70.235.040.

3. The Parties shall confer within the next sixty (60) days to determine when such a recommendation should be presented to have the best possibility of affecting the legislators on these matters.

Thus, the superior court ordered Ecology to affirmatively act.

The youth analogize this case to federal cases where the court vacated an order of dismissal when one party repudiated a settlement agreement. But the cases the youth cite do not support their position.

In VanLeeuwen v. Farm Credit Administration,[42] the Oregon District Court dismissed the action based on the parties' stipulated agreement. When one

---

[41] In re Estate of Couch, 45 Wn. App. 631, 634, 726 P.2d 1007 (1986) (citing Weber v. Biddle, 72 Wn.2d 22, 28, 431 P.2d 705 (1967)).

[42] 600 F. Supp. 1161, 1163 (D. Or. 1984).

party later filed a related case, the court vacated its original dismissal and held an evidentiary hearing to decide if that party had violated the terms of the stipulation.[43] In <u>Keeling v. Sheet Metal Workers International Ass'n, Local Union 162</u>,[44] the Ninth Circuit affirmed vacation of the original order of dismissal that was based on a settlement agreement when one party repudiated that agreement. Unlike <u>VanLeeuwen</u> and <u>Keeling</u>, this case does not involve a settlement agreement incorporated into a judgment. And neither federal case supports the proposition that a court may impose affirmative duties that the court had not previously ordered.

We agree that ordering Ecology to proceed with rule making to limit GHG emissions and provide a recommendation to the 2017 legislature on GHG emission limits was improper affirmative relief. It was not proper for the superior court to impose any affirmative duty on Ecology in its CR 60(b) order not included in its November 2015 order.

Amicus Arguments

Association of Washington Business (AWB) filed amicus briefing in the case. It asks this court to reverse the May 2016 order. AWB asserts that Ecology does not have the statutory authority to promulgate rules. Both the

---

[43] <u>VanLeeuwen</u>, 600 F. Supp. at 1163-64.
[44] 937 F.2d 408, 410-11 (9th Cir. 1991).

-17-

youth and Ecology object to AWB's arguments. We decline to consider AWB's arguments because they are outside the scope of Ecology's appeal.

CONCLUSION

The trial court abused its discretion when it granted CR 60(b) relief in three ways. First, it could not grant relief in this APA case without finding an APA violation. Second, it should not have concluded that the youth presented any extraordinary circumstances for purposes of CR 60(b)(11). Third, the trial court should not have imposed new affirmative duties in its CR 60(b) order. We reverse.[45]

_Leach, J._

WE CONCUR:

_____    _Becker, J_

---

[45] We also deny the youth's motion to strike the brief AWB filed in response to the youth's motion for permission for formal entry of the superior court's decision granting the motion for leave to file supplemental and amended pleadings. We have already ruled on the youth's formal entry motion. Their motion to strike AWB's brief is moot.

-18-