[No. 10250-5-III. Division Three. July 17, 1990.]

RUBEN J. EDINGER, *Respondent*, v. THE EMPLOYMENT SECURITY DEPARTMENT, *Appellant*.

*Kenneth O. Eikenberry, Attorney General,* and *John M. Sells* and *Evelyn A. Fielding, Assistants,* for appellant.

*Harold Moberg* and *Ries & Kenison,* for respondent.

GREEN, J.—The Employment Security Department determined that Ruben J. Edinger received an overpayment in unemployment benefits totaling $1,124 while also receiving retirement from a union pension fund. An administrative appeal affirming the decision was reviewed in superior court. The decision was reversed and the Department appeals.

The sole issue is whether the court erred in ruling that Mr. Edinger, rather than his employer, was the contributor to the pension fund. We answer "yes" and hold the Department correctly determined Mr. Edinger received an overpayment because the pension should have been deducted from his unemployment benefits under RCW 50.04.323(1).

Mr. Edinger was a member of the International Union of Operating Engineers, Local 370, in Spokane and participated in its pension plan. By virtue of a collective bargaining agreement, the plan was funded by employer contributions. In March 1985, Mr. Edinger began drawing a monthly retirement from the fund. During March through June 1985, he received unemployment benefits from the Department without reduction for pension payments. On August 20, 1985, the Department mailed to him a "Determination Notice and Overpayment Assessment". The assessment was based on the Department's determination Mr. Edinger's employer made the contributions to the pension fund thereby reducing his benefits and resulting in an overpayment of $1,124.

The Department declined to waive the assessment and Mr. Edinger appealed to the Office of Administrative Hearings. The administrative law judge (ALJ) found:

1. . . . Every employer for which claimant [Mr. Edinger] worked during his base year contributed to the union pension fund. The employer contribution was approximately $4.25 per hour. Approximately $2.50 was for the pension and $1.75 for health and welfare benefits. Employees, such as claimant, made no contributions to the pension fund during the base year. If a particular job did not require union status, nonunion workers received the $4.25 in salary instead of the money going to the union pension fund.

2. As of March 1985, claimant was receiving a monthly pension from his union in the gross amount of $492.37. That figure prorates to a weekly amount of $113.25. During the weeks ending March 9, 1985; March 16, 1985; and the weeks ending May 4, 1985, through June 22, 1985, claimant received his weekly benefit amount without reduction for any pension. The Job Service Center held that . . . due to his earnings . . . [c]laimant's total overpayment was held to be $1,160.

The ALJ concluded:

1. The provisions of RCW 50.04.323(7) [*sic*] and Internal Revenue Code Section 3304(a)(15) are applicable . . . for weeks beginning after March 31, 1980.

. . . .

3. Neither the constitutionality nor the fundamental fairness of these laws are properly within the scope of this Tribunal's jurisdiction. In the absence of legislative amendment or judicial intervention, this Tribunal has no choice but to apply the statute as written.

4. . . . [C]laimant's monthly pension was properly deducted from claimant's weekly benefit amount. . . . The correct weekly deduction, based on the lower monthly pension, is $114. We concur with the Job Service Center with the exception that the overpayment is $1,124 and not $1,160.

5. . . . [C]laimant was without fault in bringing about the overpayment. . . . The couple does have limited income at the present time . . . [but] has over $9,000 in check[ing] and saving accounts and $28,000 in stocks. We find that it would not offend equity in good conscience to require claimant to refund . . . the $1,124 in benefits . . . pursuant to RCW 50.20.190.

This decision was affirmed by the Commissioner of the Employment Security Department. Mr. Edinger appealed

to the Grant County Superior Court which reversed the Commissioner's decision, following the criteria in former RCW 34.04.130[1] which governs judicial review of this administrative decision, and found:

2.2 [Mr. Edinger] established that the Commissioner's Findings, inferences, Conclusions or decision is:

(a) Affected by error of law; or

(b) Clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or

(c) Arbitrary or capricious; in a matter which prejudices the substantial rights of the Petitioner.

Mr. Edinger was awarded $1,654 in attorney fees. This appeal followed.

The Department contends the court erred in reversing the administrative decision that the pension money Mr. Edinger received from the union fund was contributed entirely by his employer and therefore must be deducted from his unemployment benefits. RCW 50.04.323(1); WAC 192-16-030. We agree.

Since the question before us involves the application of a statute to disputed facts, our review is under the error of law standard:

Cases involving mixed questions of law and fact are reviewed under the error of law standard. A mixed question of law and fact exists when there is a dispute both as to the inferences drawn from the raw facts and the meaning of a statutory term. *Vergeyle v. Department of Empl. Sec.*, 28 Wn. App. 399, 623 P.2d 736 (1981).

In reviewing an agency's decision involving a mixed question of law and fact, the court determines the law independently and applies it to the facts as found by the agency unless the findings are clearly erroneous. *Renton Educ. Ass'n v. Public Empl. Relations Comm'n*, 101 Wn.2d 435, 441, 680 P.2d 40 (1984). The agency's interpretations of the law which it is charged with carrying out will be given substantial weight by a reviewing court. *Renton Educ. Ass'n v. Public Empl. Relations Comm'n, supra.*

. . . Review . . . is limited to the record made in the administrative proceedings. *Franklin Cy. Sheriff's Office v. Sellers*, 97

---

[1] This statute has since been superseded by RCW 34.05.570.

Wn.2d 317, 646 P.2d 113 (1982), *cert. denied,* 459 U.S. 1106 (1983); . . ..

*Korte v. Department of Empl. Sec.,* 47 Wn. App. 296, 300, 734 P.2d 939 (1987).

The applicable law is contained in RCW 50.04.323:

(1) The amount of benefits payable to an individual for any week which begins after October 3, 1980, and which begins in a period with respect to which such individual is receiving a . . . pension . . . which is based on the previous work of such individual shall be reduced (but not below zero) by an amount equal to the amount of such pension . . . which is reasonably attributable to such week: *Provided,* That

(a) The requirements of this subsection shall apply to any pension . . . only if—

(i) Such pension . . . is under a plan maintained (or contributed to) by a base period employer; and

. . . .

(b) The amount of any such a reduction shall take into account contributions made by the individual for the pension . . . in accordance with regulations prescribed by the commissioner.[2]

The Department's interpretation of this statute is contained in WAC 192–16–030: "There will be presumed to have been no employee contribution unless the claimant provides evidence satisfactory to the department that such a contribution was made." Under former RCW 50.20.190, a person who has received an overpayment is liable to repay that amount, subject to certain waiver provisions not applicable here.

Here, the collective bargaining agreement provides the pension plan is to be employer funded.[3] A letter dated September 25, 1985, from the manager of the trust verifies this fact:

---

[2]This statute is substantially the same as 26 U.S.C. § 3304(a)(15) and was enacted to make the state law consistent with federal law. See legislative history of RCW 50.04.323 and 50.04.073. This is important because the federal government contributes to the state fund. *See* RCW 50.16.010.

[3]We note that as a result of the collective bargaining agreement, the employer does not pay unemployment insurance taxes on "non wage" moneys designated for pension funds. *See* RCW 50.04.330. Thus, more unemployment insurance tax is paid on behalf of nonunion workers whose entire compensation is taxable

This hourly contribution is in lieu of wages on the paycheck. The employer may deduct this cost as an expense the same as the hourly wage paid directly to the employee. The contribution per hour requires approval by the negotiating committee made up of management and union representatives and becomes part of the collective bargaining agreement. This hourly contribution is paid directly by the employer to the Trust Fund. *By law, direct contributions from the employee cannot be accepted.*

(Italics ours.) Thus, the administrative finding that the contributions to the union pension fund are contributed solely by Mr. Edinger's employer is correct.[4] The trial court erred in its ruling.

Mr. Edinger contends that if the contributions are deemed to be made by the employer, then there is a violation of the "prevailing wage" statute, RCW 39.12, which is applicable to public works projects. This contention is rejected because it is not supported in the record. In any event, RCW 39.12.010(1) defines "prevailing rate of wage" as "the rate of hourly wage, *usual benefits,* and overtime paid in the locality . . .". (Italics ours.)

In light of our decision, the award of attorney fees to Mr. Edinger is reversed and both parties shall bear their own attorney fees and costs on appeal.

Reversed.

Munson, C.J., and Thompson, J., concur.

---

wages. This makes it more desirable for the employer to hire union workers. In addition, the union worker receives an income tax deferment on pension moneys.

[4] Apparently upon stipulation of the parties, the trial court heard additional testimony from Jerry Stephenson, the president of Union Local 370, who stated he considered the funds to be contributed by the employee. However, on cross examination he admitted the money flowed directly from the employer to the pension fund.