IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| 620, LLC, a Washington limited liability company, | ) ) ) | No. 75331-2-I |
| Appellant, | ) ) ) | DIVISION ONE |
| v. | ) ) ) | |
| MERIDIAN, INC., dba MERIDIAN CONSTRUCTION, a Washington corporation, contractor registration number MERIDC*913JW; CONTRACTORS BONDING & INSURANCE COMPANY, Bond No. SK0193, | ) ) ) ) ) ) ) | UNPUBLISHED OPINION<br><br>FILED: July 17, 2017 |
| Respondents. | ) ) | |

BECKER, J. — This is an appeal from a summary judgment dismissal of a lawsuit alleging breach of contract. There are unresolved issues of fact as to whether the breach of contract claims are barred by a settlement agreement between the parties. Accordingly, we reverse.

We review summary judgment orders de novo, engaging in the same inquiry as the trial court. Mahoney v. Shinpoch, 107 Wn.2d 679, 683, 732 P.2d 510 (1987). Summary judgment is proper when, viewing the evidence and available inferences in favor of the nonmoving party, there are no genuine issues of material fact. CR 56(c).

Taken in the light most favorable to appellant 620 LLC, the record shows that the parties entered into a construction contract in 2012. Respondent Meridian Construction agreed to construct a commercial building on 620's property for $986,700. After finishing construction in 2013, Meridian asked for an additional $180,000 above and beyond the contract price for change order work. 620 claimed the additional work was unapproved and unjustified. Meridian filed a lien against the property for $180,000.

Meridian and 620's managing member Luay Joudeh reached a settlement documented in a written agreement. The final draft labeled "Addenda D" is quoted in full below:

> THIS AGREEMENT, dated 6-9-2014 is made by and between Meridian, Inc., hereinafter called Meridian, and 620 LLC, hereinafter called 620, and lays out the terms of this contract regarding the settlement of the outstanding lien by meridian inc. The following is the outline of the agreement.
> 1. 620 LLC shall pay $30,000.00 to Meridian Inc upon signing of this agreement.
> 2. 620 LLC and Meridian shall hold each other harmless for any future claims on this project.
> 3. Meridian is released of any warranty work on this building.
> 4. Meridian inc. shall take care of any and all liens on this project.
> 5. As part of this agreement Meridian Inc. shall design and build Mr. Luay Joudeh's personal residence on the property . . . for a fixed fee of $200k. This agreement is part of the settlement. If this portion of the agreement does not happen for any reason then Luay Joudeh agrees to pay an additional $30,000.00.

Meridian removed the lien. Meanwhile, both before and after the agreement, 620 notified Meridian of various problems with the completed building. From an e-mail sent by Meridian to 620 in December 2014, it appears

2

that Meridian planned to complete certain repairs. But according to a declaration submitted by Joudeh, Meridian never fixed the defects 620 complained about.

620's suit, filed in June 2015, alleged that Meridian breached the original construction contract by failing to adhere to standard good building practices and failing to obtain approval before making changes to its work. Meridian denied liability. Meridian obtained summary judgment dismissal of the suit on the basis that the "hold harmless" provision in the settlement agreement barred 620's breach of contract claims. This appeal followed.

Summary judgment on an issue of contract interpretation is proper if a written contract, viewed in light of the parties' other objective manifestations, has only one reasonable meaning. Spradlin Rock Prods., Inc. v. Pub. Util. Dist. No. 1 of Grays Harbor County, 164 Wn. App. 641, 655, 266 P.3d 229 (2011). On the other hand, "if two or more meanings are reasonable, a question of fact is presented." Interstate Prod. Credit Ass'n v. MacHugh, 90 Wn. App. 650, 654, 953 P.2d 812, review denied, 136 Wn.2d 1021 (1998).

Meridian describes the settlement as a "walk away" agreement. The contract states that "620 LLC and Meridian shall hold each other harmless for any future claims on this project." Meridian contends 620's breach of contract lawsuit is a future claim on the project and is therefore precluded by the settlement contract.

Our objective when interpreting a contract is to effectuate the parties' mutual intent. City of Tacoma v. City of Bonney Lake, 173 Wn.2d 584, 590, 269 P.3d 1017 (2012). Intent may be discovered not only from the actual language of

the agreement but also from viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties. Scott Galvanizing, Inc. v. Nw EnviroServices, Inc., 120 Wn.2d 573, 580, 844 P.2d 428 (1993), citing Berg v. Hudesman, 115 Wn.2d 657, 667, 801 P.2d 222 (1990). See 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 301.05, at 204 (6th ed. 2012), "Contract Interpretation." Extrinsic evidence is admissible regardless of whether the contract is ambiguous. Berg, 115 Wn.2d at 667, 669.

Meridian's interpretation is not the only reasonable one. The introductory sentence describes the agreement as a "contract regarding the settlement of the outstanding lien." This limited definition of the subject matter undermines Meridian's view that the hold harmless provision barred 620 from suing for breach of contract arising from construction defects. The changes the agreement went through in drafting likewise indicate that its scope is limited. The first draft, written by Meridian, contained a provision stating, "Meridian is released of *any liability in this building.*" (Emphasis added.) When 620 objected to this wording, the parties agreed to replace it with the sentence, "Meridian is released of *any warranty work* on this building." (Emphasis added.) The revision that changed "any liability" to "any warranty work" supports 620's interpretation of the final agreement as intended merely to resolve the lien dispute and relieve Meridian of any duty to return to the building to do warranty work. A jury could

4

find that Meridian originally hoped to obtain a global release but decided to settle for a more limited release.

"An interpretation of a contract that gives effect to all provisions is favored over an interpretation that renders a provision ineffective, and a court should not disregard language that the parties have used." Snohomish County Pub. Transp. Benefit Area Corp. v. FirstGroup Am., Inc., 173 Wn.2d 829, 840, 271 P.3d 850 (2012). To rely exclusively on the hold harmless provision is to disregard the provision that releases Meridian from warranty work on the building. If the hold harmless provision was intended as a mutual release of all claims made after the date of the settlement agreement, it is not clear why there had to be a further provision releasing Meridian from warranty work.

A reasonable jury could find that Meridian's interpretation of the hold harmless provision as a global release of all past and future obligations is inconsistent with the subsequent acts of the parties. 620 asked Meridian to fix a number of alleged construction defects. Meridian indicated at least once that it would do so, as shown by the e-mail sent to 620 in December 2014:

> Just a recap of what we discussed today
> 1. Insulation cover in garage ceiling. Need to get installer out to go over attachment issues
> 2. window leak in your office and in other office . . . Need to have siding contractor come out
> 3. replace window sills in your office and in conference room B
> 4. contact information for window manufacture to address warranty work. Fogged up windows

If the parties intended for the settlement to release Meridian from liability on all claims related to construction of the building, it is unclear why Meridian offered to repair the alleged defects instead of walking away.

Because the meaning of the hold harmless provision in the context of the rest of the agreement remains open to reasonable debate, the issue is not amenable to resolution on summary judgment. "Some cases simply must be tried. In today's legal culture, there seemingly prevails a belief that all lawsuits are somehow, someway subject to resolution by dispositive motion. But that never has been—and never will be—true." Kelley v. Tonda, 198 Wn. App. 303, 307, 393 P.3d 824 (2017).

The order of summary judgment is reversed.

Becker, J.

WE CONCUR:

Spearman, J.

Schindler, J.